**Kay AMMONS, Plaintiff-Appellant,**

v.

**ZIA COMPANY, Defendant-Appellee.**

**No. 606–70.**

United States Court of Appeals,
Tenth Circuit.

Sept. 7, 1971.

Nancy Alden Bragg, Denver, Colo., for plaintiff-appellant.

Ray O. Sage, of Darden & Sage, Las-Cruces, N. M., for defendant-appellee.

Before BREITENSTEIN, ALDISERT*, and BARRETT, Circuit Judges.

ALDISERT, Circuit Judge.

This appeal is from a denial of relief requested under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which prohibits discrimination in employment classifications and compensation on the basis of sex. Contending that she was denied additional compensation because of her sex and was ultimately discharged for the same reason, appellant argues that the district court erred in its finding of fact and in its application of the statutory provisions.

Originally hired in October 1964, as a junior clerk-steno at the Apollo Site in Dona Ana County, New Mexico, at an $86.00 weekly salary, appellant was later transferred to a newly-established publication section of the Zia Company as an editor-writer, also qualified for full stenographer duties, at a salary of $502.66 per month. At the time of her discharge she was earning $580.00 monthly. During this time there were eighteen men employed as "procedures writer" or "technical writer"; twelve were associated with appellant in the publication section. These employees, including appellant, worked with engineers in the preparation of various system operational check lists and detailed maintenance procedures. Only appellant did not receive clearance for duties in the Apollo test area, where her male co-workers were able to enter and discuss specifics with various engineers, and it is this exclusion from the test area upon which appellant anchors her basic contentions of discrimination in compensation by reason of sex.

* Of the Third Circuit sitting by designation.

■ Although in Shultz v. Wheaton Glass Co., 421 F.2d 259, 266 (3 Cir. 1970), cert. denied, 398 U.S. 905, 90 S. Ct. 1696, 26 L.Ed.2d 64 (1970), the Third Circuit interpreted the Equal Pay Act of 1963, 29 U.S.C. § 206(d), it held that the provisions of the Civil Rights Act "regarding discrimination based on sex are in pari materia with the Equal Pay Act," that both statutes "serve the same fundamental purpose" and that the "Equal Pay Act may not be construed in a manner which by virtue of § 703(h) would undermine the Civil Rights Act." Therefore, the burdens of proof therein delineated have proper application in the instant case: while one who asserts a violation of the statute has the burden of proving that the company's wage differential is based on sex discrimination, if a *prima facie* case of discrimination is established, the burden of proof falls upon the company to prove that the differentiation is authorized by Section 2000e-2(h) of the Civil Rights Act which provides that a differential may be authorized if permitted by the Equal Pay Act, 29 U.S.C. § 206(d): "(iv) a differential based on any other factor other than sex."

■ It is the contention of appellant that she established a *prima facie* case of discrimination in compensation by showing that she was not permitted to qualify for the test area, even to the extent of being denied the opportunity of taking a physical examination. Critical to this approach, however, would have been a further showing that test area clearance would have entitled her to higher pay. The sole evidence supporting this inference was evidence that three male writers in the publication section, qualified for the test site, earned more than she. Yet, nine of the twelve male procedures writers in the publication section, who also qualified for the test area, earned the same or less than she.[1] Thus, higher compensation appears not to have been keyed to qualifications relating to test area clearance. There was no other evidence which directly or by implication supported the contention that admission to the test area was a passport to higher pay.

Additionally, it will be observed that the male writers who did earn more than appellant bore more impressive credentials. Although appellant attended junior college, she had earned no degree. She had last attended college in 1932 or 1933, had been unemployed for eight years and nine months before going to work for Zia Company, and her only previous employment experience in heavy industrial areas was in the Brooklyn Navy Yard during World War II. Although she had held several previous editorial positions, she had no engineering training or experience.

Of the men in the publication section earning more than she, Browning had

| 1. Male Procedures Writer | Date Highest Salary Attained During Period | Amount | Kay Ammons' Salary |
|---|---|---|---|
| * Alford | August 15, 1966 | $476.66 | $528.66 |
| * Avara | September 15, 1966 | 502.66 | 528.66 |
| ** Browning | March 15, 1968 | 684.66 | 580.66 |
| *** Donley | May 15, 1966 | 528.66 | 528.66 |
| * Garratt | August 15, 1966 | 502.66 | 528.66 |
| *** Guest | August 15, 1966 | 528.66 | 528.66 |
| * McDonald | Feb. 15, 1968 | 554.66 | 580.66 |
| ** Mack | March 15, 1968 | 736.66 | 580.66 |
| * Paris | December 15, 1966 | 520.00 | 528.66 |
| ** Perron | March 15, 1968 | 689.00 | 580.66 |
| *** Stambaugh | April 15, 1966 | 528.66 | 528.66 |
| * Tatowicz | March 15, 1967 | 520.00 | 554.66 |

*Earned less than Ammons.
**Earned more than Ammons.
***Earned Same as Ammons.

earned both a bachelor and master's degree in journalism; Mack held a bachelor's degree in psychology, had two years of mechanical engineering study, twenty graduate semester hours toward a master's degree in industrial engineering, and extensive experience as a procedures writer and systems engineer; and Perron had two years of college, plus a year of radio electronics school and extensive experience in electronic and technical writing.

Moreover, to establish a case of discrimination under Title VII, one must prove a differential in pay based on sex for performing "equal" work. "[C]ongress in prescribing 'equal' work did not require that the jobs be identical, but only that they be substantially equal." Shultz v. Wheaton Glass Co., *supra*, 421 F.2d at 265. Thus, in the instant case, appellant was obliged to demonstrate that the work performed by the three higher paid male workers was "substantially equal" to that performed by her.

Appellant cites Browning and Mack as examples of males performing substantially equal work. Browning, the journalism school graduate, was hired to produce the company newspaper. Mack was responsible for systems analysis, computer programming, and preparing data for White Sands Missile Range. In addition, he actually designed some of the tests about which the publication section did its writing. Appellant had no similar responsibilities. Indeed, her non-writing duties, including typing, taking dictation, and answering the telephone, involved less responsibilities than those expected of the higher paid men.

Congress did not intend that a naked averment of job discrimination would suffice to establish a *prima facie* case under the Equal Pay Act. It required factual support of an accusation that the employer paid the aggrieved employee wages "at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed

under similar working conditions." 29 U.S.C. § 206(d) (1). An independent review of the evidence persuades us that appellant failed to sustain her burden of showing that she was paid less than others performing "substantially equal work." It therefore does not become necessary to meet the question, reached by the district court and decided adversely to the appellant, whether the company would have been justified under 29 U.S.C. § 206(d) (1) (iv) in establishing a differential based on work within the vigorous environment of the test area.

■ The second prong of appellant's attack is the allegation of discriminatory discharge. Specifically, she contends that she was fired because she constantly complained of low pay based on her sex.

Methodically keeping a record of her complaints about low pay, she totalled 32 such instances. These complaints began, however, while she was still a junior clerk-steno and persisted when she was transferred to the publication section at a time when she was earning more money than the only other procedures writer, a male. Between August 15, 1965 and November 15, 1966, a period during which there was no male procedures writer paid more than she, appellant demanded more pay on fourteen different occasions.

The company admits that appellant's constant complaints about being underpaid had some bearing on its ultimate decision to discharge her. It emphasizes, however, that this stemmed from the complaints qua complaints of underpayment, not as complaints of underpayment by reason of her sex. In support of this contention it points to the many complaints made before there were higher paid male writers. Moreover, the company insists that other reasons prompted its action. It produced evidence that appellant persisted in violating a company rule prohibiting the bringing of personal equipment to work; that she improperly used a government typewriter and paper for personal corre-

spondence; that an "average" efficiency rating resulted in dramatic protests that she deserved the rating of "excellent" or "superior"; and that she had been using amphetamines and barbiturates for thirty years. Finally, upon a request for company information, represented by the co-employee to be urgently needed for company business, received by telephone shortly after close of office hours, appellant responded that she could not use government property—the telephone—after hours. This last incident, occurring shortly after her being criticized for the use of the government typewriter, was "the final straw." The company said she was fired because of the accumulation of all the incidents and not because of her sex.

The district court found: "Plaintiff was discharged because of a series of incidents, not related to her sex, which were reasonable grounds for her discharge." We will not disturb that finding.

The judgment of the district court is affirmed.